These proceedings are being recorded, so please speak into the microphone. And remember that we've read the briefs and the materials, so we're very familiar with your case, so I would recommend that you get to your strongest issue first. And 15 minutes per side, I think the appellant would be wise to save about five minutes or however many minutes you think you will need for rebuttal. Thank you. Please call the first case, Ms. Burke. 080805, People v. April Haynes. Good morning, my name is Linda Olthoff and I represent April Haynes. Good morning, Katherine Roy, and I'm here on behalf of the people of the state of Illinois. And yes, I will reserve a few minutes for rebuttal. And I would like to focus my comments this morning on the first issue that was raised in my brief. April Haynes was convicted of resisting arrest. There is evidence in the record that her actions were taken in response to excessive police force and that she was acting in self-defense. And yet defense counsel never submitted a self-defense instruction to the jury, depriving April Haynes of a legitimate and perhaps really her only valid defense. When was she acting in self-defense, when she threw herself on the ground or when she stayed on her hands after she was already on the ground? Well, she was resisting, I mean, do you mean when was that resistance? Well, no, my question is, the evidence seems to suggest that when they said they wanted to handcuff her and she said no, she threw herself on the ground. The evidence is unclear as to how she ended up on the ground. The videotape doesn't start rolling until after she's on the ground. Is there any evidence that the police did anything to her before she threw herself on the ground? She testified that the police used a taser gun, which is how she ended up on the ground. And why did they use the taser gun? Once the police told her that they were going to arrest her, she said, I can't be handcuffed because of her large size, I can't be handcuffed behind, handcuff me in the front. I can't physically do this behind. They refused to accommodate her size. And at that point, by both accounts, it's undisputed that they attempted to force her arms behind her back and were using force at that point. Was that excessive force, in your opinion? It may be causing her to act in self-defense if she believes she's going to be hurt, if it's going to cause her pain to have that arm behind her back. If that were the case, you'd have a self-defense instruction every time somebody didn't want to get handcuffed. She was not resisting arrest at that point. She was objecting to the manner of the arrest because she physically couldn't do it. And the officers at that point refused to accommodate her size. They had the option of multiple handcuffs. Perhaps they could have cuffed her in front. They ultimately used multiple handcuffs. I didn't see anything in the material to suggest that she even tried to put her hands behind her back. She said, I can't because I'm too large. But there's nothing to suggest that she tried to do it. She just said, I can't, and she never attempted to try. Isn't that right? I guess the record is unclear as to whether she attempted to try. The record is pretty clear that she didn't attempt to try. She just said, I can't do it. And presumably she knows her capabilities as to what she can actually do and whether it's hurting. You know, she's 400 pounds. They had at that point a single set of handcuffs. So for them to refuse to either use multiple cuffs at that point is a situation that could have been avoided. Yeah, as the trial judge said, everything that happened after April Haynes arrived at that location, she precipitated it herself. That's what the trial judge said at the sentencing hearing. And you know, there's some evidence in the record to support that. She basically said she precipitated it herself. But at the point that they are attempting the arrest, which is what we're dealing with here, she submitted. There's testimony that she submitted by both the officer and her that she submitted by putting her hands in front. Or a jury could find that in any case. And I guess that's what it comes down to. Is there evidence here that the jury was unable... Let me ask you another question, counsel. Does the person who's being arrested get to dictate the manner of the arrest? I mean, do you get to say to the... Does the arrestee get to tell the police officer how the arrest should be accomplished? They can't tell the police how to arrest them, but they can say, I physically can't do this. I mean, if you have a person in a wheelchair... That's exactly what you're saying, that she didn't object to it. She just wanted them to arrest her in the way she wanted to be arrested. Well, it seems that the police also have a duty to accommodate a person's physical situation and to arrest in a way that's going to avoid an escalation of conflict. I mean, if you have presumably a person in a wheelchair that can't get their hands behind their back, would the police have acted in the same manner? And these are all questions that should be before a jury. The jury didn't have an opportunity to consider whether this act of putting the hands in front, was that an act of submission? Or, as the officers say, you know, she wouldn't put them behind her back. Could she... Was it reasonable for her to say, I can't do this? Did the jury believe her that it was the officer tailoring her? And did the jury think that this was an excessive use of force for her to end up on the ground? The question here is, is there evidence in the record that suggests that she was responding to excessive use of police force? There's disputes as to what happened before the videotape starts rolling. But you also have a videotape that shows a police officer using the taser gun three times and knee to the back, you know, using pressure points. These are jury questions. Is this excessive? Was she responding because she was afraid that she was going to get hurt further or that she was in pain or that she was afraid and she suddenly has six officers surrounding her? We don't have to decide here, and this court doesn't have to decide, whether it's an excessive use of force. The issue is, is there evidence there from which the jury could find it? And there is evidence in the record. What evidence is there that there was excessive force exerted upon her before she fell on the ground and kept her arms underneath her? A jury could find that a police was acting excessively unreasonable when they grabbed her arms and attempted to put it behind her back in light of her large size. Is this excessive force? If she can't physically do it, a jury might find that. A jury might also choose to believe her testimony that the officer tasered her because she couldn't put her arms behind her back. That's also evidence of excessive force. If she resisted arrest by throwing herself on the ground, the resistance is a completed act before the tasering ever takes place. You can't use the tasering to bootstrap the original resistance. So you'd have to have excessive force before the first act of resistance. Other than that, you've got resistance. But we don't know how she ended up on the ground. So the question becomes, if we don't know how she got on the ground, and there's no evidence in the record as to how she got on the ground, but we do know that she got on the ground and she's lying on her stomach and kept her arms underneath her, we know that we've got an act of resistance before the tasering. So where is the basis for the self-defense instruction? There is evidence as to how she got on the ground. It's disputed, but she testified that he pulled out the taser gun and that's how she ended up on the ground. The officer testified he was attempting to force her behind her back and that it was a result of the struggle that she ended up on the ground. She was tasered before she went down to the ground? That's her testimony. Because the police couldn't get her arms behind her back, they tasered her. She did say that that portion of the videotape was missing and several other portions which showed the officers doing things that they shouldn't have been doing that would constitute excessive force were also missing. Isn't that her testimony? The officers didn't remember any of that, is that right? The things that happened later on in the videotape, she did testify there were some things. The first part where she claims that she was tasered and that's what caused her to fall to the ground. None of the police officers that were there testified to that fact, right? Well, it's undisputed that the cameras didn't catch what was happening before. They just weren't positioned in the right way. That's not my question. She said that she was tasered and that's what caused her to fall to the ground. The police officers testified that when they tried to handcuff her, she fell to herself on the ground and put her hands under the body. That's a very different and two completely separate kinds of testimony as to how she ended up on the ground. Right. That is true. The officer said that she got to the ground as they were attempting to handcuff her. Again, it's up for the jury to make that determination. Wasn't there also a, correct me if I'm wrong, a stipulation or an agreement by and between the parties as to the accuracy of the tapes? Yes. Yes, they agreed to that. We're not disputing that the tape was inaccurate. We're just saying that it didn't catch what happened before she fell on the ground. And that act of her falling on the ground, whether that's her resistance, the jury wasn't explicitly instructed as to what they needed to find, wasn't instructed as to which act constituted resistance. These are all jury questions, which they did not have an opportunity to deliberate. The jury was essentially told if you find that there is any resistance, you know that he's an officer. If you find that there's some resistance, resistance is unlawful, and essentially their deliberation is there. Yet because there's evidence from which the jury could find that she was acting as self-defense, the jury didn't consider all these other questions. These questions became irrelevant to it. So counsel was ineffective for not seeing that the jury was properly instructed, that it could not consider which acts were resistance, whether the police were acting excessively, whether she was acting out of fear because she was being harmed. And this was not inconsistent with the defense theory. The defense argued that she was getting beat up. There was no reason not to give this instruction. And we would argue that she was prejudiced by this because the jury ended its deliberations prematurely without considering really all this evidence that the defense presented because they became factually irrelevant once the jury was told it could end its deliberation, once it found resistance. I just want you to switch gears a little bit. Okay. I take it your position is that a Zayer violation is an automatic reversal? Right. That is our position. And that is a case that is currently pending in the In the Illinois Supreme Court, yes. And that's even where the defendant testifies and presents evidence? Right. Right. Because there are other questions that need to be given to the jury. Okay. Well, if there are other questions on those issues, we would just say that one other point I guess I would like to make about the prejudice is that the jury did acquit April Haynes on the other counts, which came down to credibility. And so prejudice did happen where it was not properly instructed, where it could not consider these facts that were also hinged on credibility determinations. So if there are no other questions, we do ask that this court reverse your conviction on those bases. Thank you. Thank you. May it please the Court. From the minute defendant – oh, I'm sorry. My name is Catherine Roy, and I'm here on behalf of the people. Let me get you to start with your point left off. Your position is that a Zayer violation is not an automatic reversal? Yes. Subject to a harmless error analysis? Yes, it is. What's wrong with – What's wrong with Houston? The Fourth District case? Oh. Well, the reasoning in the cases which find that it's structural error – Stop.  What's your question? Okay. To justify stump. Yeah. Well, I believe that case was vacated on September 30th of 2009. Our Supreme Court vacated four appellate court decisions, Alexander, Anderson, Matcham, and Stump. Presently, this issue is in front of the Illinois Supreme Court in People v. Thompson, and there's a split within the appellate court. There are the Wilmington-Blair line of cases, and then we believe that this issue should – that the reasoning in Glasper should apply in full force because of this court's recent decision in People v. Magellanes and People v. Hammonds, which explain why the harmless error analysis would be proper. Does that answer your question? Well, I suppose my question is if the Supreme Court mandates that these admonitions be given to jurors and the admonitions are not given at all to one of the jurors, then I suppose the harmless error analysis has to be your argument because it's error. We know it's error. We don't dispute it's error not to give it to you. That's the way that this court has looked at the situation. However, there's no constitutional right to Rule 431B questionings in either the Illinois Constitution or the U.S. Constitution, and the U.S. Supreme Court has found that there are limited circumstances in which there's structural error, and Glasper found that this isn't one of the circumstances that would warrant it. And I think the easiest way to look – Counsel, you're talking all around the question. Justice Hoffman's question was pretty direct and pretty simple, and it was, you know, was it – the Supreme Court has mandated that these instructions be given. If it wasn't given, then I don't think anybody disputes that that one juror didn't get these specific instructions. Was that error or not? Okay, yes, it was error. But it's subject to the harmless error analysis. And I think one of the best ways to look at this is – You know what, thank you for answering that question directly. Because so many times people come in here and you ask them a direct question that's so obvious, and they don't answer it directly. I appreciate that. I really do. Okay. I think it's interesting to – this has been explained to me, and I think it's interesting to look at this issue from this point, that a Doyle violation, which is a constitutional issue, it's subject to the harmless error analysis. And here we have Rule 431 is an Illinois Supreme Court rule, and to not use a harmless error analysis, it just wouldn't make sense. I have difficulty understanding what you're talking about. Failing to give 431B, or question a juror based on 431B, how you would ever prove prejudice if it isn't an absolute violation? Unless you're supposed to ask the jurors? What do you do? I mean, how do you apply a harmless error analysis to it when we have no way of determining what the prejudice is, or the level of prejudice? Well, I think there are numerous facts why the harmless error analysis should be applied. In this case, the trial court asked about the subject matter of the ZEHR principles, and the trial court specifically asked if the alternate could be fair and impartial. And here, the defendant actually testified at trial, and the defendant presented evidence, which kind of puts the third and the fourth ZEHR issues, it sort of diminishes the error. And the alternate was given a written instruction detailing that the defendant was presumed innocent, and there's no evidence that the alternate was biased against the defendant, or that she didn't understand the ZEHR principles, or that there was anything that would call into question her objectivity or neutrality. And there's no evidence that the defendant didn't have a fair and impartial trial fact. So you think that proper instructions at the end of the trial cure any ZEHR violation in a case where the defendant actually testified? Yes. To address issue one, from the minute the defendant arrived at the scene of the accident, she attempted to thwart the police officer's investigation through deception. And when her deception was revealed, and the officers informed her that they were placing her under arrest for obstruction of justice, again, the defendant thwarted the officer's unquestionably lawful actions by resisting her arrest. The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as producing a just result. Defendant has not made this showing. Can I ask a question? Yes. When the jury was instructed, was the jury told what acts on the part of the defendant constituted resistance? What specifically the defendant did that constituted resistance? Well, in closing arguments. I mean, if the jury was told falling on her, falling on the ground and putting her arms underneath her constituted resisting arrest, and all of the excessive force took place after that, then she has no argument whatsoever, because that's what the jury decided. But if the jury was never told what it was that was resisting arrest, and you've got some questionable resistance before an act that might arguably be excessive force on the part of the policeman, and other resistance occurring after that act, then in that particular case she's got an argument that she probably should have received an instruction. Respectfully, I disagree. Because the jury, during closing arguments, well, okay, let me back up for a second. This is why I disagree. From the moment the officers gave a verbal demand telling the defendant that she was under arrest, and defendant's first reaction to say was that she wanted to be handcuffed in front and then to clench her hands together. And at that time, nothing the officers did could have been construed as excessive. And that was argued in closing arguments by the people. And to suggest otherwise... She did a whole lot of stuff. She clenched her hands in front of her. She refused to put her hands behind her back. She put her hands under her stomach. She did all sorts of things. And it's a continuum. But my question is, what was the jury told in its instructions constituted the act of resistance? Because I'm trying to figure out at what point in time the state's position was she had committed the act of resistance. The state's position is that the moment the officers told her that she was under arrest and she clenched her hands in front of her, that was the resistance. What if the jury told that in the instructions that that was the act of resistance? Well, I know that the jury was given a standard IPI instruction. I don't think they went into the details. What if the jury determined that the resistance was something that happened after the tasering, something that she did after the tasering? At that point in time, if that was what the jury focused on, wouldn't she be entitled to self-defense? The law is quite clear that you can't resist a lawful arrest. We understand that. That's not the issue. Okay. The issue is, look, if a person resists arrest and then there's excessive force, they don't have a self-defense instruction to the resistance. Right. If the excessive force occurs before the act of resistance, then they're entitled to the instruction. So now the question that I have is, where did the resistance take place vis-à-vis the tasering? Right. There was no excessive force before the defendant arrested. And the defense counsel's strategy at trial was that the defendant didn't lie, didn't resist the arrest, didn't kick Officer Hynek. The strategy was that the defendant didn't do it. And the defendant testified to that at trial. And she said all of that. She said she didn't do it. And so to, in hindsight, suggest that her counsel was ineffective for not tendering a self-defense instruction is to unfairly brand her counsel ineffective, where he had a sound and valid trial strategy that she didn't do it. So you're saying that no time during the trial did she talk about the self-defense aspects of what she was attempting to raise at the end of the trial? Exactly. The threshold question is, did she do some affirmative action to warrant a self-defense instruction? And she didn't. She said that herself. She didn't kick Officer Hynek. She didn't resist. But that wouldn't be what caused the self-defense instruction would go to what Justice Hoffman asked you. If prior to the time that she fell on the ground and rolled on her hands, if something happened before that that was excessive force that caused her to protect herself, if you will, that's where the self-defense instruction, even if it's something slight, that's where the self-defense instruction may be appropriate, and that's the question. At what point is the state asserting that it took place? The resisting took place once the officers told her that she was under arrest, and she put her hands in front of her. And everything that resulted after that, this was a standard arrest, a standard routine procedure that could have taken two minutes, and instead it took 17, because the defendant would not comply and wouldn't at least put her hands to her side. She clenched them in front of her. And so under these facts and circumstances, a self-defense instruction would not have been proper. And therefore, the defendant's right of self-defense was not triggered, and counsel's strategy that the defendant didn't do it was valid, and it was successful for two of the four charges. And it's inappropriate to bring counsel ineffective for using a strategy that was totally effective. In addition, defendant has not shown that absent the alleged error, the decision reached would have been different. The defendant was not prejudiced because she wouldn't have gotten the instruction even if she had asked for it. And even if she got the self-defense instruction, the outcome wouldn't have been different, because the self-defense is an affirmative defense. And the defendant made no affirmative action or testified that there was no affirmative action taken to justify self-defense. Did she testify to that? No, I'm sorry. Let me step back and restate that. So self-defense is an affirmative defense, and the defendant did not testify that she took any sort of action that was justified. She just testified that she didn't do it. Well, I don't think so, counsel. Wasn't her testimony that she was trying to stop them from hurting her? That's what she said. She said, I was trying to keep them from hurting me anymore because they were hurting me. And when I was putting my arms up, it was to keep them from hurting me. That doesn't sound to me like she just said, I didn't do it. That was all she resisted, and the police officers had to answer. I know, but I'm just responding to what you're saying, that there was no testimony that she did anything that could remotely construe the self-defense. And I don't think that that's what your opponent is saying at all. Well, I mean, I believe when she's saying that she's saying, no, I didn't do anything. My body was out of control. My actions were involuntary. I put my hands up because I couldn't control my body. I mean, she's still stating that she took no affirmative action in protecting herself. I believe that's what she says during her testimony. So, in conclusion, it's inappropriate to brand counsel as ineffective for using a strategy that was completely effective. Thank you very much. Thank you. A brief rebuttal, counsel? Sure. Why isn't a zero-violation juried when a defendant testifies and the jury is properly instructed at the end of the trial? Because the purpose of a zero question is to expose potential bias prior to trial and to give the lawyers opportunities to use almost too late to instruct them. We want to ensure that their You're saying that the jury should be given all the instructions before the case starts? Right. Correct. And then my only other response to the State's Attorney's argument that it was her defense that she didn't do it and this was a valid trial strategy. There is videotape that unfortunately shows resistance because it can be something as little as putting your hands in your pockets. And she did testify when the State's Attorney cross-examined her. Why are you swatting? Why are you continuing to behave this way? She did say it was because I was in pain. I wanted them to stop hurting me. And so, based on that, she was entitled to a self-defense instruction. If there are no other further questions, thank you and we ask that you reverse this conviction. Thanks. This matter will be taken under advisement. This court stands adjourned.